UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

T<small>IMOTHY</small> C<small>ALDWELL</small>,

           Plaintiff,           Case No. 2:21-179

v.                                      Honorable Maarten Vermaat

U<small>NKNOWN</small> C<small>UMMINGS</small> et al.,

           Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 10.)

      Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Taskila, Cummings, Wilson and Stromer for failure to state a claim.

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying Rules 18, 20, and 21 regarding joinder, the Court will drop Defendant Miller as a party and dismiss Plaintiff's claims against him without prejudice. Plaintiff's Eighth Amendment and negligence claims against Defendants Lorendo and Dessellier remain in the case. The Court will also deny Plaintiff's motion for a preliminary injunction and temporary restraining order (TRO). (ECF No. 6.)

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden Kris Taskila, Resident Unit Manager (RUM) Lance Miller, Inspector Unknown Cummings, Counselors Eric Stromer and Timothy Wilson, and Correctional Officers Donald Lorendo and Bruce Dessellier.

Plaintiff alleges that on November 23, 2020, he wrote to Defendants Stromer, Wilson, and Cummings to inform them that he "needed protection from several prisoners and their associates." (ECF No. 1, PageID.3.) The next day, Plaintiff filed a grievance against those Defendants for ignoring his letter. (*Id.*)

On December 9, 2020, Defendants Wilson and Stromer interviewed Plaintiff regarding his request for protection. (*Id.*) Plaintiff told them how "prisoners [were] having people call members of [his] family [threatening] them that if they didn't pay them money that they were going to harm [Plaintiff] every time [he] came out to general population." (*Id.*) During the interview, Plaintiff showed Defendants Wilson and Stromer a JPay letter complaining about this issue and indicating that his stepsister, Destiny Wilson, had said that "people were calling [their]

2

mother [threatening] her that if she didn't pay them people were going to hurt [Plaintiff]." (*Id.*) Plaintiff identified several prisoners who were verbally threatening him and told Defendants Wilson and Stromer that there were even more inmates involved "that [he] couldn't identify because [he] didn't know their information." (*Id.*) He told Defendants Wilson and Stromer that "these prisoners . . . were calling [him] a rat for making a statement against their associate and that they told [Plaintiff] that [he] couldn't walk the yard." (*Id.*, PageID.3–4.)

On December 10, 2020, Plaintiff's request for protection was denied by the Security Classification Committee (SCC). (*Id.*, PageID.4.) In doing so, the SCC noted:

> Prisoner Caldwell provided names of people he claims are threatening him, but provided no proof.
>
> Caldwell fought prisoner Brown 731822 on 2-22-20 but a SPON was not deemed necessary[.]
>
> File reviews show[] no other issues involving any of the other listed inmates. Based on information gathered, there is no evidence to substantiate[] prisoner[] Caldwell's claims. Protective environment was not warranted at the time. Prisoner will be placed in general population housing once released from administrative segregation.

(ECF No. 6, PageID.29.) On December 22, 2020, he learned that his grievance had been denied. (ECF No. 1, PageID.3–4.) Plaintiff appealed the denial of his grievance, and his appeal was denied at Steps II and III. (*Id.*)

On January 20, 2021, Plaintiff and inmate Jones were being escorted to the shower by Defendants Dessellier and Lorendo when inmate Jones told Plaintiff "to bring [his] rat ass down here[;] I got something for you." (*Id.*) Plaintiff told Defendants Dessellier and Lorendo, "Y'all know this man is trying to dress me out[,] why are y'all trying to force me to shower with him." (*Id.*) Plaintiff avers that inmate Jones is "well known and it's [documented] in his prison file that he like[s] throwing feces on other prisoners." (*Id.*) He asserts that Defendants Dessellier and Lorendo watched inmate Jones throw feces on him. (*Id.*) Defendants Dessellier and Lorendo

3

escorted inmate Jones back and came back for Plaintiff, "laughing [and] saying 'Caldwell that's what you get.'" (*Id.*) Plaintiff's grievance regarding the failure to protect was denied at all levels. (*Id.*, PageID.5.)

On July 20, 2021, Defendant Miller came to Plaintiff's cell so that Plaintiff could sign a release form to be released back to general population. (*Id.*) Plaintiff asked who else was being released, and Defendant Miller replied that inmate Lewis on A-wing was. (*Id.*) Plaintiff told Defendant Miller that inmate Lewis had been "one of the prisoners [he] couldn't identify earlier when [he] ask[ed] for protection on November 23, 2020." (*Id.*) Defendant Miller responded, "well sound[s] like you got a problem," and walked away from Plaintiff's cell. (*Id.*) After being strip searched, Plaintiff walked upstairs, set his personal television down, and asked inmate Lewis to "hold up so [Plaintiff] could put [his] property onto the unit cart." (*Id.*) Plaintiff avers that inmate Lewis "drop[ped] his belongings in front of officers[,] came up on [him], and hit [him] in front of the officers." (*Id.*, PageID.5–6.) Plaintiff "fought back because the officers [sat] there and watch[ed] instead [of] intervening." (*Id.*) After being placed in his cell, several officers came up to Plaintiff "laughing [and] saying 'you shouldn't be around snitching.'" (*Id.*, PageID.6.)

Based on the foregoing, Plaintiff asserts violations of his Eighth Amendment rights, as well as a state law claim for negligence. (*Id.*) Plaintiff seeks declaratory relief, as well as an injunction requiring that Defendants provide him protection and transfer him to another facility. (*Id.*, PageID.7.) Plaintiff also requests compensatory and punitive damages. (*Id.*) In his motion for a preliminary injunction and TRO, Plaintiff seeks "to ensure that he receives protection from inmates wanting to do him serious bodily injury." (ECF No. 7, PageID.37.)

**II.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

4

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

5

### A. Claims Against Defendant Taskila

Plaintiff sues Defendant Taskila, Warden of AMF, but makes no allegations against him. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendant Taskila in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent Plaintiff seeks to hold Defendant Taskila liable because of his position as Warden, government officials may not be held liable for the unconstitutional

conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Plaintiff fails to allege any facts showing that Defendant Taskila encouraged or condoned the

7

conduct of his subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's claims against Defendant Taskila will, therefore, be dismissed.

### B. Eighth Amendment Failure to Protect Claims

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Moreover, inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff

8

must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

### 1. Defendant Cummings

Plaintiff's only allegation against Defendant Cummings is that he failed to respond to Plaintiff's November 23, 2020, letter informing Defendants Cummings, Wilson, and Stromer that he required protection "from several prisoners and their associates." (ECF No. 1, PageID.3.) Plaintiff's conclusory allegation, however, does not permit the Court to conclude that Defendant Cummings was aware of and consciously disregarded an excessive risk to Plaintiff's safety. *See Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. Consequently, Plaintiff's Eighth Amendment claim against Defendant Cummings will be dismissed.

### 2. Defendants Wilson and Stromer

With respect to Defendants Wilson and Stromer, Plaintiff avers that they interviewed him on December 9, 2020, with respect to his request for protection. (ECF No. 1, PageID.3.) Plaintiff told them how various inmates were having people call his family members with threats to harm Plaintiff once he came to general population if his family did not pay money to those individuals. (*Id.*) Plaintiff identified some of the inmates and stated that there were more he could not identify because he did not know their information. (*Id.*)

The SCC denied Plaintiff's request for protection on December 10, 2020. (*Id.*, PageID.4.) In doing so, the SCC noted that Plaintiff "provided no proof" of the threats, and that a

review of his file "show[ed] no other issues involving any of the other listed inmates." (ECF No. 6, PageID.29.) His request for protection was denied due to the lack of substantiating evidence. (*Id.*) Nowhere in Plaintiff's complaint, however, does he aver that Defendants Wilson and Stromer were involved in the decision to deny his request for protection. Plaintiff's allegations do not permit the Court to conclude that Defendants Wilson and Stromer were aware of and consciously disregarded an excessive risk to Plaintiff's safety. *See Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. Moreover, Plaintiff cannot hold Defendants Wilson and Stromer liable for failing to conduct an adequate investigation in response to his request for protection. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendants Wilson and Stromer.

### 3. Defendants Dessellier and Lorendo

Plaintiff alleges that on January 20, 2021, Defendants Dessellier and Lorendo were escorting him to the shower when inmate Jones said, "bring yo rat a** down here I got something for you." (ECF No. 1, PageID.4.) Plaintiff alleges that he told Defendants Dessellier and Lorendo, "Y'all know this man is trying to dress me out why are y'all trying to force me to shower with him." (*Id.*) He avers that inmate Jones is "well know and it's document[ed] in his prison file that he like[s] throwing feces on other prisoners." (*Id.*) Defendants Dessellier and Lorendo stood by and watched inmate Jones throw feces on Plaintiff, and then laughed and said, "Caldwell that's what you get." (*Id.*) From these allegations, Plaintiff has set forth a plausible Eighth Amendment claim against Defendants Dessellier and Lorendo.

### 4. Defendant Miller

Plaintiff alleges that on July 20, 2021, Defendant Miller came to his cell so that Plaintiff could sign a release to be released back to general population. (*Id.*, PageID.5.) Plaintiff asked Defendant Miller who else was being released to general populations, and Defendant Miller

10

told him that inmate Lewis was. (*Id.*) Plaintiff told Defendant Miller that inmate Lewis "was one of the prisoners [he could not] identify when [he asked] for protection on November 23, 2020." (*Id.*) Defendant Lewis said, "well sound[s] like you got a problem" and walked away. (*Id.*) Plaintiff was strip searched, walked upstairs, and asked inmate Lewis to "hold up so [Plaintiff] could put [his] property onto the unit cart." (*Id.*) Plaintiff alleges that inmate Lewis dropped his belongings in front of the officers escorting them and hit Plaintiff. (*Id.*) Plaintiff fought back "because the officers [sat] there and watch[ed] instead [of] intervening." (*Id.*, PageID.5–6.) From these allegations, Plaintiff has set forth a plausible Eighth Amendment claim against Defendant Miller.

### C. State Law Negligence Claims

Plaintiff also raises state-law claims for negligence. (ECF No. 1, PageID.6.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for violations of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law, therefore, fails to state a claim under § 1983.

Plaintiff, however, seeks to invoke this Court's supplemental jurisdiction over his state law claims. The Court, however, has dismissed all of Plaintiff's federal claims against Defendants Taskila, Cummings, Wilson, and Stromer. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, in light of the Court's dismissal of the federal claims against

Defendants Taskila, Cumming, Wilson, and Stromer, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction as to these Defendants. Accordingly, Plaintiff's state law claims against Defendants Taskila, Cummings, Wilson, and Stromer will be dismissed without prejudice.

### III.   Misjoinder

As noted *supra*, the Court has concluded that Plaintiff's federal claims against Defendants Taskila, Cummings, Wilson, and Stromer must be dismissed for failure to state a claim, and that his state law claims against those Defendants will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them. The Court has further concluded that Plaintiff has set forth plausible Eighth Amendment failure to protect claims against Defendants Dessellier, Lorendo, and Miller. Notwithstanding that conclusion, however, the Court must consider whether Plaintiff's remaining claims are properly joined in this matter.

#### A.   Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

12

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter

13

frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983

14

suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims turn out to be frivolous. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

As noted *supra*, Plaintiff's claims against Defendants Dessellier, Lorendo, and Miller remain. As discussed *supra*, Plaintiff alleges that in January of 2021, Defendants Dessellier and Lorendo failed to protect him from inmate Jones while he threw feces at Plaintiff in the shower. Plaintiff alleges that six months later, in July of 2021, Defendant Miller told him that inmate Lewis would be released from segregation at the same time as Plaintiff, and that Defendant Miller did nothing when Plaintiff told him that inmate Lewis was one of the prisoners that Plaintiff had been concerned about when he sought protection eight months earlier. Plaintiff was assaulted by inmate Lewis that same day. Plaintiff, however, does not allege any connection between the assault by inmate Jones in January of 2021 and the assault by inmate Lewis in July of 2021.

Other than saying that each claim arises under the Eighth Amendment, Plaintiff's allegations do not suggest that any question of law or fact is common to the remaining two

incidents or the particular Defendants involved in those incidents. *See* Fed. R. Civ. P. 20(a)(2)(B). Moreover, while Plaintiff makes no allegations against Defendant Taskila, he cannot manufacture proper joinder based upon a theory that unrelated claims and parties are connected by having a common superior. Put differently, the presence of Defendant Taskila as the potential superior to Defendants Dessellier, Lorendo, and Miller does not suffice to connect the claims so as to render their joinder proper. Plaintiff's claim against Defendants Dessellier and Lorendo are wholly unrelated to Plaintiff's claim against Defendant Miller. The Court concludes that the claim against Defendant Miller is, therefore, misjoined.

> **B.** **Remedy**

Because the Court has concluded that Plaintiff has improperly joined Defendant Miller to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the

discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

Plaintiff's allegations against Defendant Miller arose no earlier than July of 2021, when Defendant Miller failed to step in to prevent inmate Lewis' assault of Plaintiff. As to this misjoined claim, therefore, Plaintiff has sufficient time in his limitations period to file a new complaint against Defendant Miller. Plaintiff will not suffer gratuitous harm if Defendant Miller is dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 to dismiss without prejudice the claims against Defendant Miller. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL

485204, at *3 (same). If Plaintiff wishes to procced with his claims against Defendant Miller, he shall do so by filing a new civil action on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.[1]

### IV.     Plaintiff's Motion for a Preliminary Injunction and TRO

Plaintiff seeks a preliminary injunction and TRO to "ensure that he receives protection from inmates wanting to do him serious bodily injury." (ECF No. 7, PageID.37.) He reiterates the factual allegations set forth *supra* in both his motion and memorandum of law in support thereof. (ECF Nos. 6, 7.)

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether the plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors must be "carefully balanced" by the district court when exercising its equitable powers. *See Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Furthermore, where an inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 704 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking

---

[1] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" is a showing of a strong or substantial likelihood of success on the merits of his § 1983 action. *See NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Because the Court concludes that Plaintiff has failed to state a claim for relief, Plaintiff has not shown the requisite likelihood of success and his motion for TRO or preliminary injunction is properly denied.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss Defendants Taskila, Cummings, Wilson, and Stromer for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

Having reviewed Plaintiff's remaining claims under Rule 21 of the Federal Rules of Civil Procedure, and concluded that Defendant Miller is misjoined, the Court will drop Defendant Miller as a party and dismiss without prejudice Plaintiff's claims against him. Plaintiff's Eighth Amendment and negligence claims against Defendants Dessellier and Lorendo remain in the case. Plaintiff's motion for a preliminary injunction/temporary restraining order (ECF No. 6) will also be denied.

An order consistent with this opinion will be entered.

Dated: February 16, 2022 /s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge